UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OLIVIA ANTIONETTE PRADIER | * | CIVIL ACTION NO. 23-5769 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| STARBUCKS CORPORATION | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| | * | |
| | * | |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is defendant's Motion to Dismiss or Alternatively, Stay (Rec. Doc. 9) in which defendant argues that this dispute is subject to a binding arbitration agreement. Because there is a valid agreement to arbitrate and plaintiff's claims fall within the scope of the parties' agreement, the parties must be compelled to arbitration and this case must be stayed and administratively closed pending the arbitration. The Court declines to dismiss the action.

Background

This is an employment discrimination lawsuit. Plaintiff Olivia Antionette Pradier alleges that she experienced disability[1] discrimination, gender discrimination, and retaliation while employed at Starbucks Corporation. Her complaint contains no further factual allegations.

Ms. Pradier alleges that she filed a charge with the Equal Employment Opportunity Commission on or around November 2022. She alleges that she received a Right to Sue letter on July 7, 2023. She filed this lawsuit on October 4, 2023.

On December 21, 2023, Starbucks filed the present Motion to Dismiss or Alternatively, Stay. According to Starbucks,[2] Ms. Pradier began applying for a barista position via the Taleo

---

[1] She alleges her disability is a traumatic brain injury.
[2] Starbucks has submitted the sworn declaration of Maudi Shamiso Marangwanda, Director of Recruiting US Retail at Starbucks, along with copies of the electronically signed e-Signature Consent and Starbucks Mutual Arbitration Agreement.

1

online application process in December 2019. She created an account with her contact information and a unique username and password. While completing the tasks in the Taleo online application, Ms. Pradier was notified that "As of October 2014, Starbucks Corporation requires as a condition of employment for certain positions that the employee will be subject to an arbitration agreement." She completed the application process.

Ms. Pradier received an offer of employment, and before she started, she was required to complete the online Employee Onboarding process via Taleo. Once she accepted her offer, she entered her Social Security number and date of birth and typed her name to electronically sign the "e-Signature Consent" page, indicating her consent to receive and respond to information electronically. Ms. Pradier was also required to view and sign the Mutual Arbitration Agreement as a condition of her employment. To acknowledge review and acceptance of the Mutual Arbitration Agreement, Ms. Pradier entered her account login password to confirm her electronic signature. She completed the Taleo onboarding process and electronically signed the Mutual Arbitration Agreement on December 27, 2019.

The Mutual Arbitration Agreement provides that "Starbucks and I agree to use binding individual arbitration to resolve any 'Covered Claims' that arise between me and Starbucks . . . ." (Rec. Doc. No. 9-2, at 68). The Agreement defines Covered Claims as "those brought under any statute, local ordinance, or common law relating to my employment, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment." Id.

In opposition to Starbucks' motion,[3] Ms. Pradier states that she does not recall signing any paperwork related to an arbitration agreement. She claims that the exhibits submitted by Starbucks

---

[3] Ms. Pradier's opposition memorandum was filed a day late. The Court will not strike the opposition on this basis. Ms. Pradier has been experiencing homelessness and other issues making filing more challenging, and the Court

show false electronic submissions. She argues that anyone can create an account and upload her resume and apply to work at stores. She says she did not apply and reapply with corporate stores until she moved back to New Orleans, and she mentions her past work with Starbucks at franchise stores (at least one in a grocery store). She submits that she was told by the hiring manager at the Canal Street store in New Orleans that she could be hired back to a corporate store. She claims this manager hired her for a supervisor position, that she was never onboarded, and that she started successfully at the store.[4]

Law and Analysis

1. *Rule 12(b)(3)*

The Fifth Circuit has recognized that a motion seeking dismissal for improper venue under Federal Rule Civil Procedure 12(b)(3) is an appropriate vehicle to seek dismissal based on a forum selection or arbitration clause.[5] Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 902 (5th Cir. 2005). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007).

---

minimized any prejudice resulting from the delay by granting Starbucks an extension of time to reply. Additionally, the Clerk of Court marked the opposition memorandum deficient because it did not contain a signature. In the interests of justice, the Court nonetheless considers the arguments raised in the opposition—to the extent relevant.

[4] She also explains that she is transgender and that when she was applying/reapplying to a corporate store on Canal Street in New Orleans, she had to give her former name (her "dead name"). She alleges that she experienced transphobic hate and violence while the store was being overseen by a corporate district manager. These allegations to go the merits of her discrimination claims and not to whether the arbitration agreement is enforceable.

[5] Defendant acknowledges that the Fifth Circuit has not addressed whether Rule 12(b)(1) is also a proper mechanism to seek dismissal based on an arbitration clause. See Noble Drilling Servs., Inc. v. Certex USA, Inc., 620 F.3d 469, 472 n. 3 (5th Cir. 2010). Nonetheless, defendant seeks dismissal under both Rule 12(b)(1) and 12(b)(3). Because defendant cites no Fifth Circuit case law to support dismissal under Rule 12(b)(1), the Court does not consider this rule. See Sinners & Saints, L.L.C. v. Noire Blanc Films, L.L.C., 937 F. Supp. 2d 835, 845 (E.D. La. 2013) ("Because the Fifth Circuit has endorsed Rule 12(b)(3) as the proper vehicle to seek dismissal based on either an arbitration or forum-selection clause, the Court will treat Defendants' motion as a 12(b)(3) motion to dismiss for improper venue.")

2. *Arbitration Agreements*

Starbucks does not explicitly move to compel arbitration, yet it cites the standard for doing so and appears to seek an order compelling arbitration. Upon application of one of the parties, the Federal Arbitration Act requires this Court to stay the judicial proceedings and compel arbitration of any issue referable to arbitration under a written arbitration agreement. 9 U.S.C. § 3; see Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985). Courts conduct a two-step inquiry to determine whether arbitration must be compelled: whether the parties agreed to arbitrate the dispute in question and, if so, whether legal constraints external to their agreement foreclose the arbitration of those claims. Webb v. Investacorp, Inc., 89 F.3d 252, 257–58 (5th Cir. 1996). The determination of whether the parties agreed to arbitrate the dispute requires consideration of "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Id. at 258. Whether there is a valid agreement to arbitrate "is governed by ordinary state-law contract principles." Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)

Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. "A contract is formed by the consent of the parties established through offer and acceptance." Id. art. 1927. Louisiana state law recognizes the validity of both electronic contracts and electronic signatures. La. Rev. Stat. § 9:2607; Hill v. Hornbeck Offshore Servs., Inc., 799 F. Supp. 2d 658, 661 (E.D. La. 2011) (enforcing "clickwrap" arbitration agreement the employee viewed and signed electronically). Although Louisiana law requires that agreements to arbitrate be in writing, La. Civ. Code arts. 3099-3100, Louisiana courts have not required that the written agreement to arbitrate be signed by

both parties where the actions or conduct of the parties show its validity. Marino v. Dillard's, Inc., 413 F.3d 530, 532 (5th Cir. 2005).

3. *Analysis*

To determine whether this case must be dismissed and the parties compelled to arbitration, the Court first considers whether there is a valid agreement to arbitrate between the parties. The evidence submitted by Starbucks establishes that Ms. Pradier electronically consented to the Mutual Arbitration Agreement when she accepted employment with Starbucks. Her only defense is that she does not recall signing the agreement and that anyone might have uploaded her resume and submitted an application. But her unsubstantiated (and unsworn) assertions do not contradict the evidence showing that she did so.

First, a Starbucks recruiting employee Marangwanda has sworn to have personal knowledge of the facts asserted and the documents attached to the declaration. Marangwanda oversees Starbucks' tracking and onboarding system for employees and manages the Taleo system on a daily basis. Marangwanda's description of the application process and the documents electronically signed during the onboarding process establish not only that Ms. Pradier electronically consented to the Mutual Arbitration Agreement but also that Starbucks required agreement to arbitration as a condition of employment. Second, there is no reason to believe any interloper created an account, submitted an application for employment, accepted employment, and completed the onboarding process. To the contrary, the evidence shows that Ms. Pradier's personal information, including address, phone number, and even Starbucks partner number were entered in creating an account to apply for employment. The evidence also shows that she entered her Social Security number and date of birth when she electronically signed the "e-Signature Consent." This belies Ms. Pradier's claim that "anyone" might have created the online application.

And there is no dispute that she ultimately began working for Starbucks at a corporate (as opposed to franchise) store—not only does Marangwanda certify that Ms. Pradier began working at Starbucks on Magazine Street in New Orleans in December 2019 and remained employed in December 2023, but Ms. Pradier's lawsuit against Starbucks arising out of her employment with Starbucks confirms that she worked for Starbucks. As noted, the evidence shows that Starbucks required agreement to arbitration as a condition of employment. Through her electronic consent and her continued employment with Starbucks, Ms. Pradier manifested her consent to the Mutual Arbitration Agreement. The Court concludes that the parties have a valid agreement to arbitrate.

The Court next concludes that the parties agreed to arbitrate the dispute in question. Claims covered by the Mutual Arbitration Agreement include claims brought under any statute relating to Ms. Pradier's employment, including harassment, discrimination, and retaliation. Ms. Pradier's employment discrimination claims are clearly within the scope of the arbitration agreement.

No legal constraints external to the parties' agreement foreclose arbitration. The Mutual Arbitration Agreement is valid and enforceable, and Ms. Pradier must submit the claims raised in this lawsuit to arbitration. Under the Federal Arbitration Act, this lawsuit must be stayed pending arbitration. Although it might also be appropriate to dismiss this lawsuit as filed in the improper venue, the Court finds that a stay is more appropriate under the circumstances.

## Conclusion

Because the parties entered a valid agreement to arbitrate that covers the claims raised in this lawsuit, the parties are hereby compelled to arbitration and this lawsuit is STAYED and administratively closed pending the arbitration. Defendant's Motion to Dismiss or Alternatively, Stay (Rec. Doc. 9) is GRANTED.

New Orleans, Louisiana, this 30th day of September, 2024.

                                                                            Janis van Meerveld  
                                                      United States Magistrate Judge