UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OLIVIA ANTIONETTE PRADIER | * | CIVIL ACTION NO. 23-5769 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| STARBUCKS CORPORATION | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| | * | |
| | * | |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is plaintiff's Motion for Reconsideration (which plaintiff, proceeding pro se, has styled as an "Amendment to Motion to Dismiss or Alternatively, Stay (Rec. Doc. 9) Granted"). (Rec. Doc. 46). Because plaintiff has not shown a manifest error of law or newly discovered evidence, her Motion for Reconsideration is DENIED. The Court's previous ruling staying this case and compelling the parties to arbitration is final.

Background

Plaintiff Olivia Antionette Pradier filed this employment discrimination lawsuit on October 4, 2023, alleging that she experienced disability[1] discrimination, gender discrimination, and retaliation while employed at Starbucks Corporation. After numerous delays resulting from difficulties receiving and responding to mail due to Ms. Pradier's homelessness, the Court granted Starbuck's Motion to Dismiss or Alternatively, Stay (Rec. Doc. 9), on September 30, 2024. The Court found that there is a valid agreement to arbitrate and Ms. Pradier's claims fall within the scope of the parties' agreement. (Rec. Doc. 41). Thus, the Court compelled the parties to arbitration and stayed the case pending the arbitration. Id.

---

[1] She alleges her disability is a traumatic brain injury.

1

Following the Court's ruling, Ms. Pradier filed two additional documents that appeared to respond to Starbucks' arguments in support of its motion. The Court observed that Ms. Pradier raised the same arguments she had already raised in opposition. (Rec. Doc. 45). This offered the Court no reason to reconsider its prior decision and the Court declined to do so. Id. Ms. Pradier also addressed Starbucks' argument that her opposition memorandum should be stricken as late. Id. But the Court explained that it had not stricken her opposition and had, in fact, considered it in ruling on Starbucks' motion. Id.

Thereafter, Ms. Pradier filed the present motion, which the Court construes as a Motion for Reconsideration. She once again reiterates the arguments she previously raised in opposition to Starbucks' Motion to Dismiss or Stay. She argues that the documents submitted by Starbucks from its Taleo online application program contain false electronic submissions. In apparent support of this claim, she asserts that although Starbucks' affiant Marangwanda stated that Ms. Pradier "began applying for a barista position . . . in December 2019" and that "[s]he created an account with her contact information and unique username in password," the Taleo documents submitted by Starbucks date back to 2018. (Rec. Doc. 46, at 2). She says that the Taleo documents show her submission "to Lafayette, LA Corporate stores," but she says she was not in Lafayette in December 2019. Id. She says that she previously worked for a Starbucks Corporate store in 2004. Id.

Ms. Pradier also recounts delays she has experienced in receiving documentation and deficiencies issued by the Clerk of Court, and she insists that her response to the motion to dismiss should be considered. As noted, the Court considered her response.

She again explains that she is transgender, and she describes issues related to having to use her former name (her "Dead Name") so the manager could investigate her for rehire. She says that she experienced transphobic hate and violence while the store was being overseen by a Corporate

2

District Manager. She says she called a hotline provided in the breakroom. She submits that she never alleged this treatment occurred at the Canal Street Store.

Ms. Pradier again argues that "anyone can create an account and upload my resume and apply to stores" throughout the company. (Rec. Doc. 46, at 5). She seems to argue that the Taleo documents show she was hired and onboarded for the Canal St. store. Id. at 6. She submits that she started "for Magazine and State by training at Ferret St. and Maple St. Store." Id. She says she did not have a partner number at the time she applied for employment so she could not have entered it.

Starbucks argues that reconsideration is not appropriate because Ms. Pradier has not presented the Court with any manifest errors of law or fact and she has not presented any newly discovered evidence. It argues that Pradier's arguments regarding her previous employment history do not support reconsideration because the Court has already considered those arguments. It submits that her arguments about her late opposition and her missing signature are moot. And it argues that discrimination that she suffered at one store rather than another is immaterial to whether she agreed to the arbitration agreement. Starbucks argues further that the error regarding plaintiff's partner number does not warrant reconsideration. It acknowledges that the Court may have mistakenly stated that plaintiff entered her Starbucks partner number in applying for employment. But it argues that this mistake does not rise to the level of a manifest error because the Court did not base its finding that Ms. Pradier electronically signed the arbitration agreement on the use of a Starbucks partner number in creating the application account, but instead relied on the wealth of other evidence. Finally, Starbucks argues that the Court's failure to specify the store location where she worked does not bear on whether she signed the arbitration agreement.

3

In reply, Ms. Pradier insists that she did not know her partner number at the time she applied for employment. She insists this error in the Court's ruling warrants reconsideration.

Law and Analysis

1. *Standard*

"The Federal Rules of Civil Procedure do not provide for a 'Motion for Reconsideration' but such motions may properly be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment." Hamilton Plaintiffs v. Williams Plaintiffs, 147 F.3d 367, 371 n. 10 (5th Cir. 1998). If filed within the time period required by Rule 59(e), the motion for reconsideration is considered under that rule. See id.; Shimon v. Sewage & Water Bd. of New Orleans, No. CIV.A. 05-1392, 2007 WL 101038, at *1 (E.D. La. Jan. 9, 2007). A Rule 59(e) "motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. Proc. 59(e). Plaintiff here has filed her motion for reconsideration within 28 days of the judgment and, accordingly, Rule 59(e) applies.

"A motion to alter or amend judgment [under Rule 59(2)] must 'clearly establish either a manifest error of law or fact or must present newly discovered evidence." Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005) (quoting Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)). It "cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" Rosenblatt v. United Way of Greater Houston, 607 F.3d 413, 419 (5th Cir. 2010) (quoting Rosenzweig v. Azurix Corp., 332 F.3d 854, 863 (5th Cir. 2003)).

Reconsidering a judgment is extraordinary, and the court "must balance between two competing interests: the desire to achieve and maintain a final judgment and the desire to reach a just decision based upon the evidence." Shimon v. Sewage & Water Bd. of New Orleans, No. CIV.A. 05-1392, 2007 WL 101038, at *2 (E.D. La. Jan. 9, 2007); see Templet v. HydroChem Inc.,

367 F.3d 473, 479 (5th Cir. 2004) ("Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.). When deciding whether to consider late-filed evidence, "the court should consider, among other things, (1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was available to plaintiffs before they responded to the summary judgment motion, and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened." Ford v. Elsbury, 32 F.3d 931, 937–38 (5th Cir. 1994). But the court notes that the mover is not required to "first show that her default was the result of mistake, inadvertence, surprise, or excusable neglect or that the evidence is such as to show that the judgment was manifestly wrong." Id. at 937 (5th Cir. 1994) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994)).

2. *Analysis*

The Court first notes that Ms. Pradier's arguments related to her late opposition memorandum or other filing deficiencies are moot. As previously stated, Ms. Pradier's filings were considered by the Court. To clarify the docket, the "Deficient" notation next to Ms. Pradier's sur-reply (Rec. Doc. 38) shall be removed.

With regard to her arguments about the transphobic hate she experienced, these are merits arguments that are not now before the Court. In other words, the Court first considered whether the parties had a valid agreement to arbitrate and whether the dispute falls within the agreement's scope. Because the Court found the answer to both of these questions to be yes, the arbitrator must decide whether Ms. Pradier is entitled to relief for her claims of discrimination. (Rec. Doc. 41).

The Court now turns to Ms. Pradier's arguments that the Court should reconsider its Order and Reasons finding this dispute subject to the parties' arbitration agreement.

Ms. Pradier has identified an error in the Court's Order and Reasons that is mentioned in her motion and which she focuses on in reply. On page 5, the Court stated that:

> Second, there is no reason to believe any interloper created an account, submitted an application for employment, accepted employment, and completed the onboarding process. To the contrary, the evidence shows that Ms. Pradier's personal information, including address, phone number, and *even Starbucks partner number* were entered in creating an account to apply for employment. The evidence also shows that she entered her Social Security number and date of birth when she electronically signed the "e-Signature Consent." This belies Ms. Pradier's claim that "anyone" might have created the online application.

(Rec. Doc. 41, at 5) (emphasis added). As Ms. Pradier and Starbucks agree, Ms. Pradier was not required to enter a Starbucks partner number when creating her account to apply for employment. The affidavit of Maudi Shamiso Marangwanda submitted by Starbucks with its original Motion to Dismiss states that Ms. Pradier was "required to create an account by providing her first name, last name, and email address, and by selecting a unique username and password combination known only to her." (Rec. Doc. 9-2, at 4). Marangwanda also explained that after Ms. Pradier created her account, she was required to login and complete tasks like uploading her personal information such as her full name and address. Id. Marangwanda explained that during the application process, Ms. Pradier also entered her educational history and phone number. Id.

Ms. Pradier's "Partner Number" does appear in the "Resume" section of the Taleo documents. (Rec. Doc. 9-2, at 9). But, despite the Court's statement, neither the Marangwanda affidavit nor any other evidence indicates that the Partner Number was entered by Ms. Pradier in creating her account. The signature page of the Mutual Arbitration Agreement containing Ms. Pradier's electronic signature and the date also reflects Ms. Pradier's partner number. But again, there is no evidence to suggest that Ms. Pradier entered the partner number at the time she signed electronically the Mutual Arbitration Agreement. Instead, the Marangwanda affidavit explains that "[t]o acknowledge, review, and acceptance [sic] of Starbucks Mutual Arbitration Agreement, Ms.

Pradier entered her account login password to confirm her electronic signature. Ms. Pradier electronically signed the Mutual Arbitration Agreement on December 27, 2019." (Rec. Doc. 9-2, at 6).

Although Ms. Pradier has identified an error in the Court's factual findings, the Court concludes that the error does not warrant reconsideration. This is because the Court's conclusion that Ms. Pradier entered her own personal information in creating an online account to apply for employment is not called into question by the fact that Ms. Pradier was not required to, and did not, enter her Starbucks Partner Number.[2] It remains undisputed that she entered her address, phone number, and email address. It remains undisputed that she created a unique username and password for her account and that she entered her username and password to accept the Mutual Arbitration Agreement. Critically, the Court's ultimate conclusion that Ms. Pradier consented to the Mutual Arbitration Agreement is not impacted by the clarification that Ms. Pradier did not enter her Starbucks Partner Number. The Court finds that the error identified by Ms. Pradier regarding the entry of her partner is immaterial. Therefore, it does not warrant reconsideration.

With regard to Ms. Pradier's claims that the Taleo system reflects false electronic submissions and that anyone could have uploaded her resume, the Court can find no basis to reconsider. Ms. Pradier has not shown any manifest error of law or fact that would warrant reconsideration. Ms. Pradier does not present newly discovered evidence. All arguments she now raises could have been, and were in fact, raised in her opposition to Starbucks' motion and rejected by the Court.[3] All facts she now asserts could have been raised in the original briefing. Indeed, all

---

[2] Specifically, the Court found that her "personal information [was] entered in creating an account to apply for employment." (Rec. Doc. 41, at 5).
[3] Ms. Pradier previously argued that anyone could have created an account and uploaded her resume and applied to stores throughout the country. (Rec. Doc. 32, at 2). She also argued that the exhibits showed false electronic submissions by herself. Id. at 1.

7

purported discrepancies that she outlines in her motion are based on the attachments to Starbucks' motion to dismiss.

Even if the Court were to consider her factual assertions that the Taleo documents date back to 2018 when Starbucks asserted she began applying for a position in December 2019, that she was not in Lafayette in December 2019, and that she started work for the store at Magazine and State Street store (through trained elsewhere), the Court finds that these assertions do not indicate any actual discrepancy between the Marangwanda affidavit and the Taleo documents, nor within the Taleo documents themselves. Instead, the Taleo documents are consistent with Starbucks' position that Ms. Pradier began an application process for certain positions in New Orleans in December 2019 and was hired in December 2019.[4] Marangwanda made no claim that Ms. Pradier created her password and account in 2019. When Ms. Pradier did so is irrelevant. The Taleo documents and Ms. Pradier's assertions are consistent in claiming that Ms. Pradier was hired at the Magazine and State Street store. And whether Ms. Pradier was in Lafayette in December 2019 is also irrelevant; both Ms. Pradier and Starbucks appear to agree that she applied for work at stores in New Orleans. No assertion that Ms. Pradier now puts forward calls into question the

---

[4] A review of the Taleo documents attached to the Marangwanda affidavit reflect a General Profile with a "creation date" of January 20, 2018. (Rec. Doc. 9-2, at 8). The documents also include a Resume page that lists an "Original Hire Date" of August 23, 2004, and a "Most Recent Hire Date" of December 27, 2019. Id. at 9. It is unclear if these dates were entered by Ms. Pradier or generated automatically. The documents include a section titled "History" that include event notations under a heading for "General Profile" as well as numerous headings corresponding to certain positions and locations such as "shift supervisor – Store# 58835, STATE ST & MAGAZINE ST," "shift supervisor – Store# 58126, GIROD ST AND O'KEEFE ST)," "shift supervisor – Store# 55386, ST CLAUDE & ELYSIAN FIELDS," and "barista – Store# 58835, STATE ST & MAGAZINE ST)." Id. at 19-32. The events listed under General Profile and the three foregoing locations all have as their earliest entry "Profile process- Start" on December 16, 2019. Id. The State St. barista position shows status changed to "Offer Accepted" on December 22, 2019, with a listed start date of December 26, 2019. Id. at 33. The other positions listed above include a note that "Candidate was hired for requisition . . . barista - Store# 58835 MAGAZINE ST & STATE ST candidate was hired to another req, Event date: Dec 22, 2019." Id. 27, 30, 31. In addition to the three foregoing locations in New Orleans, the History includes headings for positions at stores in other locations as well as two other New Orleans positions: "shift supervisor – Store# 495134, Freret Street" and "shift supervisor – Store# 55414, S. CLAIBORNE AND WASHINGTON." Id. at 36-62. Most of these headings include events dating back to 2018 that appear to reflect that Ms. Pradier applied for a position or at least began an application.

evidence showing that Ms. Pradier electronically consented to the Mutual Arbitration Agreement as part of the online onboarding process. Her new assertions are, therefore, not important and do not warrant reconsideration. The Court finds that consideration of Ms. Pradier's late asserted facts is not warranted here.

## Conclusion

Ms. Pradier has not shown a manifest error of fact or law in the Court's Order and Reasons granting Starbucks' motion, staying this case, and ordering the parties to arbitration that would impact the Court's conclusions therein. The only error she has identified is immaterial. She also has not presented any newly discovered, and even if the facts she now asserts could be considered newly discovered, they do not rise to the level of warranting reconsideration because they would not alter the Court's conclusions. Accordingly, Ms. Pradier's Motion for Reconsideration is DENIED. To clarify the docket, however, it is ordered that the "Deficient" notation next to Ms. Pradier's sur-reply (Rec. Doc. 38) shall be removed.

New Orleans, Louisiana, this 6th day of January, 2025.

_____
Janis van Meerveld
United States Magistrate Judge